UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
                                )
GALAXY LIGHTS LTD.,             )
                                )
         Plaintiff,             )
                                )
    v.                          )   C.A. No. 19-503 WES
                                )
KINDA PRIESTLY and J.           )
GOODISON CO. INC.,              )
                                )
         Defendants.            )
_____)
```

<u>**MEMORANDUM AND ORDER**</u>

WILLIAM E. SMITH, District Judge.

Before the Court is Defendant Kinda Priestley's Motion for Summary Judgment, ECF No. 45. For the reasons that follow, that motion is GRANTED.

I.  BACKGROUND

Plaintiff owns the Santandrea, a 95-foot tugboat converted into a private superyacht. See Def.'s Statement Undisputed Facts ("DSUF") ¶ 5, ECF No. 45-2; see also DX13, ECF No. 45-15. In October 2017, the Santandrea was at the J. Goodison Shipyard ("shipyard"), which is operated by Defendant J. Goodison Co. Inc, for engine repairs and was logged as a "dead ship" with no operable engines or steerage. DSUF ¶¶ 6, 7, 20. Defendant Priestly owns the M/V Monhegan ("Monhegan"), an 85-foot converted commercial

ferry,[1] which was also moored at the shipyard.  Id. ¶¶ 4, 8.  On

October 29, in anticipation of a well-forecasted storm,[2] the

Monhegan was moved from its mooring on the east side of the

Goodison Travel Lift Finger Pontoon to the south pier on the west

side of the pontoon, bringing it closer to the Santandrea, which

was also moored on the west side.[3]  Id. ¶¶ 13-16.

The storm hit on the evening of October 29 and continued into

the morning of October 30.  During the storm, the Monhegan,

operated by Dale Maxcy, "remained at her berth with engines

operating" and with lines connected to the pier.[4]  Id. ¶ 21; Pl.'s

---

[1] After conversion and until 2013 or 2014, the Monhegan was
operated as a dinner cruise boat.  PXB 11:9-12, ECF No. 46-3.  It
seems that it is now a personal-use-only vessel.  See Compl. ¶ 4,
ECF No. 1.

[2] Although both parties were aware of the impending storm,
Def.'s Statement Undisputed Facts ("DSUF") ¶¶ 9-10, ECF No. 45-2;
Pl.'s Counter-Statement Material Facts ("PCMF") ¶ 9, ECF No. 46-
1, they disagree as to the predictability of the storm's severity.
DSUF ¶ 8; PCMF ¶ 8.

[3] The parties disagree as to who decided that the Monhegan
should be moved.  Plaintiff contends that Defendant Priestly and
Dale Maxcy, the Monhegan's captain (Plaintiff asserts that this
designation is inapt and argues that Maxcy was not a licensed or
credentialed captain, PCMF ¶ 17), made the decision together, DSUF
¶ 14, and Defendant Priestly contends that Maxcy made the decision
along with shipyard employees, PCMF ¶ 14.  The parties agree that
the shipyard did not object. DSUF ¶ 18; PCMF ¶ 18.

[4] Plaintiff disputes that the lines were relied on to keep
the vessel secured and asserts that the Monhegan actually relied
on the engines and rudder.  PCMF ¶ 21.  It is undisputed that the
Monhegan remained in the same location throughout the storm,
however.

2

Counter-Statement of Material Facts ("PCMF") ¶ 21, ECF No. 46-1.

At around midnight, at least some of the Santandrea's mooring lines

parted and at least one of the cleats securing the mooring lines

failed.  DSUF ¶¶ 24-25.  As a result, the Santandrea drifted from

its berth and allided[5] with the Monhegan.  Id. ¶¶ 24-27; PCMF ¶¶

24-27.  Both ships, as well as the pier, were damaged.  DSUF ¶ 28.

Plaintiff, owner of the Santandrea, claims that Defendant Priestly

is liable in negligence for the damages that the Santandrea

sustained in the allision.  Compl. 7-8, ECF No. 1.  Defendant

Priestly argues that Plaintiff is solely at fault for the allision

and that she is therefore entitled to summary judgment.

II.  LEGAL STANDARD

To succeed at summary judgment, the moving party must show

there is no genuine issue of material fact, and that judgment is

appropriate as a matter of law.  Fed. R. Civ. P. 56.  A factual

dispute is genuine if it "may reasonably be resolved in favor of

either party," and the fact finder must "make a choice between the

parties' differing version of the truth at trial."  Vineberg v.

_____

[5] An allision (noun form of the verb "allide") differs from a collision in that it involves impact with a stationary object as opposed to with another moving vessel.  Allision, Merriam-Webster Dictionary,        www.merriam-webster.com/dictionary/allision. Plaintiff contests the characterization of the incident as an allision, arguing that the Monhegan was not stationary at the time of the impact.  Pl.'s Mem. Law Opp. Def.'s Mot. Summ. J. 9, ECF No. 46.  Per the analysis contained infra, the Court concludes that the term allision is appropriate.

Bissonnette, 529 F. Supp. 2d 300, 301 (D.R.I. 2007). A fact is material if its determination one way or the other "has the capacity to sway the outcome of the litigation under the applicable law." Id. at 301-02 (internal citations omitted). When reviewing a motion for summary judgment, the court must "view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." Id. at 302 (internal citations omitted). If the nonmoving party "fail[s] to come forward with sufficient evidence to generate a trialworthy issue, [that failure] warrants summary judgment to the moving party." Id. (internal citations omitted).

III. DISCUSSION

Plaintiff claims that Defendant Priestly was negligent in moving the Monhegan prior to the storm, that she negligently prepared the Monhegan for the storm, and that this negligence proximately caused the damage to the Santandrea. Compl. 7–8. Defendant Priestly claims that she is not liable as a matter of law because Plaintiff is presumed negligent, eliminating the negligence claim against her. Def.'s Mem. Law Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") 2, ECF No. 45-1.

The elements of negligence under admiralty law are the same as the elements of negligence under the common law. Crowley v. Costa, 924 F. Supp. 2d 402, 414 (D. Conn. 2013) (internal citation

omitted).  A plaintiff must prove duty, breach of duty, and causation.  Id.

In addition, under admiralty law, there are several rules that create presumptions of liability in negligence cases.  Here, each party argues that a different rule applies and guarantees them victory.  Defendant Priestly advocates for the Louisiana rule, Def.'s Mem. at 2, and Plaintiff advocates for the application of the Pennsylvania rule, Pl.'s Mem. Law Opp. Def.'s Mot. Summ. J (Pl.'s Mem.") 11, ECF No. 46.  The Court concludes that the Louisiana Rule applies and that Defendant Priestly is entitled to summary judgment.

A.    The Louisiana Rule

The Louisiana rule "applies to vessels moving or drifting due to an external force, such as the current or wind," that allide with a stationary object[6] and "creates a presumption that the moving vessel was negligent."  Fischer v. S/Y NERAIDA, 508 F.3d 586, 593 (11th Cir. 2007) (citing The Louisiana, 70 U.S. 164, 174 (1865)).  This rule applies to ships that break away from their moorings. See Compania de Navigacion Porto Ronco, S.A. v. S/S American Oriole, 474 F. Supp. 22, 26–27 (E.D. La. 1976), aff'd,

---

[6] "Object" includes other vessels. See Compania de Navigacion Porto Ronco, S.A. v. S/S American Oriole, 474 F. Supp. 22, 23 (E.D. La. 1976) (applying the Louisiana Rule where ship broke free from mooring and drifted into other moored ships), aff'd, 585 F.2d 1326 (5th Cir. 1978); see also Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1555 n.14 (11th Cir. 1987).

585 F.2d 1326 (5th Cir. 1978).  "The custodian of the drifting vessel bears the burden of disproving fault by a preponderance of the evidence."  James v. River Parishes Co., 686 F.2d 1129, 1133 (5th Cir. 1982).  "The presumption derives from the common-sense observation that moving vessels do not usually collide with stationary objects unless the moving vessel is mishandled in some way."[7]  Bunge Corp. v. Freeport Marine Repair, Inc., 240 F.3d 919, 923 (11th Cir. 2001).  "The presumption is universally described as 'strong,' and as one that places a 'heavy burden' on the moving ship to overcome."  Id. (citations omitted).  Application of the presumption shifts the burden of production and persuasion to the other vessel.  In re Complaint of ENSCO Offshore Co., 9 F. Supp. 3d 713, 722 (S.D. Tex.  2014).  The presumption can be rebutted by a showing of one of the following: "that the allision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the allision was an unavoidable accident."  Bunge Corp., 240 F.3d at 923; see also Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp. LLC, 571 F.3d 206, 211 (2d Cir. 2009).

Defendant Priestly argues that the Louisiana rule applies to this set of facts because the Santandrea broke from its moorings

---

[7] The rule is "simply a common-sense inference, akin to the inferences drawn routinely in nonmaritime accident cases in accordance with the principle of res ipsa loquitur (the thing speaks for itself)."  Rodi Yachts, Inc. v. Nat'l Marine, Inc., 984 F.2d 880, 886 (7th Cir. 1993).

and, pushed by the elements, hit the Monhegan, which was
stationary.  Def.'s Mem 8.  Defendant Priestly also argues that
Plaintiff cannot rebut the presumption because it has not presented
any expert testimony supporting its claim that the Monhegan is at
fault for the allision.  Id.  In response, Plaintiff argues that
the rule does not apply because the Monhegan was not stationary at
the time of impact and, even if the rule does apply, the impact
was the Monhegan's fault or was inevitable.  Pl.'s Mem. 7, 14-15.
The Court agrees that the rule applies and that Plaintiff cannot
rebut the presumption that the Santandrea was negligently
operated.

        1.   The Rule Applies

   Plaintiff challenges the application of the Louisiana rule
and argues that the rule cannot apply because the Monhegan was not
stationary at the time of the incident or, at the very least,
whether the Monhegan was stationary is a genuine issue of material
fact.  See Pl.'s Mem. 2, 9.  Plaintiff relies on testimony that
the Monhegan's engines were running throughout the storm and were
being used to keep the ship "off the dock" to which it was tied
and that Defendant Priestly and Maxcy were not relying on the
mooring lines to keep the Monhegan in position.  Id. at 9; PXB
54:18, ECF No. 46-3.  During her deposition, Defendant Priestly
testified that she and Maxcy "decided the best course of action
was . . . we had tied up all of those lines, and we had gotten the

main engines running that morning and that the best course would be to basically bury [the Monhegan] against its lines and sort of drive it just a little but against – you know, just enough to engage the props into the waves and to basically keep it stationary." Id. 53:23–54:6. She went on to explain that engines were engaged "just enough to provide some positive pressure against those lines to keep [the Monhegan] off the dock" and to "hold[ it] parallel to the pier." Id. 54:16–18, 73:20–21.

Plaintiff seems to think that just by pointing out the Monhegan's use of engines it has established that the Monhegan was not stationary at the time of the incident. Plaintiff has not, however, pointed to any evidence that the Monhegan moved from its mooring at any point during the course of the storm. In fact, Plaintiff agrees that the Monegan remained in one position throughout the storm. Thus, it cannot be said that the question "may reasonably be resolved in favor of either party," Vineberg, 529 F. Supp. 2d at 301. Deciding that this issue creates a genuine issue of material fact would go against the record of the case and would belie the very nature of the sea –- for, no matter how securely tied, whether it be a ship or a dock, objects in the ocean move to and fro with the movement of the water. Perhaps Plaintiff has established that the Monhegan was "moving" in some sense of the word, but the purpose of the rule makes clear that perfect stillness is not required. The Court is confident that the rule

would not apply if the Monhegan were underway at the time of incident, but that is not the case.  See 33 C.F.R. § 83.03(i) ("underway means that a vessel is not at anchor, or made fast to the shore, or aground"); see also Yarmouth Sea Prods., Ltd. v. Scully, 131 F.3d 389, 393 (4th Cir. 1997) (holding that vessel was not stationary for the purposes of the Louisiana Rule because it was underway).  No reasonable fact finder could conclude that the Monhegan was anything other than stationary for the purposes of the rule.  Thus, regardless of the use of engines to keep the Monhegan safely braced against the storm, it was "stationary" for the purposes of the Louisiana rule.[8]

### 2.   Plaintiff Cannot Rebut the Presumption

Plaintiff next argues that, even if the rule applies, the allision was the Monhegan's fault.  Pl.'s Mem. 8.  As previously noted, the Louisiana rule creates a strong, but rebuttable, presumption of negligence.  See Bunge Corp., 240 F.3d at 923.  If Plaintiff can demonstrate that either (1) the allision was the Monhegan's fault, (2) the Santandrea acted with reasonable care, or (3) the allision was the result of an inevitable accident, the presumption is rebutted.  See id.  Plaintiff's argument is two-fold: it argues that (1) Defendant Priestly and the Monhegan are at fault for the allision and (2) Defendant Priestly created a

---

[8] Plaintiff does not otherwise contest the application of the rule.

"zone of danger" when she had the Monhegan moved, which made the allision inevitable.[9]   Pl.'s Mem. 8.     Neither argument bears fruit.[10]

Plaintiff first cites various things that the Monhegan did not do that would have reduced the severity of the allision (e.g., not putting fenders on the side of the ship and having insufficient crew aboard during the storm) and argues that the failure to take these steps renders Defendant Priestly partially or totally at fault for the allision.  See Pl.'s Mem. at 8.  Even assuming that the failure to take these steps was negligent, the presumption is not rebutted unless the failure to take the steps was a substantial and material factor causing the allision.  See Chicago v. M/V Morgan, 375 F.3d 563, 572 (7th Cir. 2004).  There is no evidence or allegation that the alleged inaction played any role in causing

---

[9] Plaintiff contends that the Santandrea was moored with sufficient lines but does not otherwise claim that it acted with reasonable care.  See Compl. ¶ 13.

[10] To the extent Plaintiff also argues that the accident is attributable to a force majeure or Act of God, that argument also fails.  Such an escape from the presumption "applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality afford no reasonable warning of them."  Warrior & Gulf Navigation Co. v. United States, 864 F.2d 1550, 1553 (11th Cir. 1989) (internal citations omitted).  There is no allegation or evidence to suggest that this storm rose to the required level of severity and unpredictability.  See Simmons v. Berglin, 401 Fed. Appx. 903, 906 (5th Cir. 2010) (concluding that Hurricane Katrina was an Act of God where unexpected strength of storm collapsed buildings and docks in area and ripped all but one of the nearby boats from their moorings).

10

the Santandrea to break free from her mooring and allide with the
Monhegan.   Because there  is  no  causal  connection  between  the
Monhegan's  alleged  negligent  preparation  for  the  storm  and  the
allision,  Plaintiff  has  not  established  that  the  Monhegan  is  at
fault.

Plaintiff also contends that the decision to move the Monhegan
was  negligent,  that  the  accident  would  not  have  happened  if  it
were  not  for  the  Monhegan's  move,  and  that,  as  a  result,  the
accident  was  the  Monhegan's  fault  and  was  "inevitable."   Pl.'s
Mem.  10.   This  is  an  amalgamation  of  the  first  and  third  methods
of  rebutting  the  Louisiana  rule's  presumption.

Plaintiff  contends  that  the  allision  would  not  have  happened
if  the  Monhegan  had  not  been  moved  to  a  different  part  of  the
shipyard,  relying  on  testimony  from  Defendant  Priestly's  surveyor
stating  that  had  the  Monhegan  remained  in  its  original  position
the  allision  with  the  Santandrea  would  not  have  occurred.   See  id.
It  is  Plaintiff's  position  that  this  testimony  is  enough  to,  at
the  very  least,  create  a  genuine  issue  of  material  fact.   Id.

First,  it  is  not  disputed  that  had  the  Monhegan  not  been
there,  the  Santandrea  would  not  have  hit  it.   Defendant  Priestley's
expert  testified  that  the  allision  with  the  Monhegan  would  not
have  happened  if  not  for  the  move  --  the  testimony  was  not  that  no
allisions  would  have  occurred  at  all.   PXH  22:1-12,  ECF  No.  46-9.
Presumably,  the  Santandrea  would  have  hit  something  else,  likely

11

the pier, had the Monhegan not been there.  If this type of evidence allowed escape from liability, any ship that allided with another could rebut the presumption of negligence by simply pointing out that it wouldn't have hit the other ship if the ship hadn't been there.

Importantly, there is no allegation and no evidence that the move caused the Santandrea to break free from her mooring, and, thus, there is no causal connection between the move and the allision.  Further, in order to show that the accident was inevitable, Plaintiff would have to show that "the accident could not have been prevented by 'human skill and precaution and a proper display of nautical skills.'"  James, 686 F.2d at 1132 (quoting Louisiana, 70 U.S. at 174).  This burden "is not easily met." Martinez v. United States, 705 F.2d 658, 661 (2d Cir. 1983). Although Plaintiff alleges that the Santandrea was "securely moored" and "properly manned," Compl. ¶¶ 13–14, that the crew "used their best efforts to secure the vessel," id. ¶ 21, and attempted to maneuver the Santandrea away from the Monhegan to no avail, id. ¶ 23, Plaintiff has not established that the allision could not have been prevented.

Furthermore, these conclusions are bolstered by the fact that Plaintiff has not presented any expert testimony in support of its positions.  In the present circumstances, expert testimony is required to apprise the trier of fact of what constitutes

12

reasonable care under the circumstances and of whether the Monhegan's actions caused an inevitable allision.  See Dougherty v. Haaland, 457 F. Supp. 860, 866 (E.D. Penn. 1978) (expert testimony required where "matters clearly lie outside the common knowledge and experience of ordinary persons"), aff'd 601 F.2d 574 (3d Cir. 1979); Long Island R.R. Co. v. N.Y. Cent. No. 25, 182 F. Supp. 100, 103-04 (S.D.N.Y. 1960) (requiring expert testimony as to whether moving vessel acted with reasonable care to rebut Louisiana rule's presumption); see also Porto Rico Lighterage Co. v. Capitol Constr. Co., 287 F.2d 507, 509 n.1 (1st Cir. 1961) (explaining that "[s]eamanship is a matter normally calling for expert testimony, and not advocacy, or wisdom after the event"); Transp. Line v. Hope, 95 U.S. 297, 299 (1877) (discussing the important role and admissibility of expert testimony in maritime cases).  The facts of this case lie outside the Court's ken and thus require the aid of expert testimony, which Plaintiff has not provided.[11]  Therefore, no reasonable trier of fact could find for

---

[11] This is true despite Plaintiff's insistence that expert testimony is not needed because this case would proceed to a bench trial and, therefore, the fact finder would be "an experienced trier of fact."  Pl.'s Mem. at 7.  While the Court is perhaps more comfortable filling the role of fact finder than a jury of lay people, the Court is a lay person when it comes to negligence in the operation of vessels during storms.  Thus, the Court is convinced that expert testimony is required.

the Plaintiff and, the Plaintiff cannot rebut the presumption that it is at fault.[12]

B.    The Pennsylvania Rule

Plaintiff also argues that the Pennsylvania rule applies and creates a presumption that Defendant Priestly was negligent.  Pl.'s Mem. 11-14.  This argument is unsuccessful.

The Pennsylvania rule provides that "when . . . a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster."  The Pennsylvania, 86 U.S. (1 Wall.) 125, 136 (1874).  For the Pennsylvania rule to apply, the Santandrea must prove that (1) there was a statutory violation, (2) the statutory violation involved maritime safety or navigation, and (3) the allision was the type of accident the statute intended to prevent.  See Crowley v. Costa, 924 F. Supp. 2d 402, 417 (D. Conn. 2013).   In addition, Plaintiff must prove

---

[12] Further, although Plaintiff challenges the reliability of this evidence, Defendant Priestly has presented expert reports concluding that the allision was the sole fault of the Santandrea. See DX12, ECF No. 45-14(considering the decision to move the Monhegan prior to storm); DX13 at 8, ECF No. 45-15 ("investigation concludes that . . . the movement of the Monhegan to a secondary location was not a cause of this incident).  While the application of the Louisiana rule makes this evidence superfluous, its presentation accentuates Plaintiff's failure to present its own expert testimony.  Thus, the lack of expert testimony in support of Plaintiff's argument is especially detrimental.

14

that the statutory violation, if it existed, was the proximate cause of the allision.  The Pennsylvania, 86 U.S. at 135.  This rule is far less robust than the Louisiana rule, however.  See Poulis-Minott v. Smith, 388 F.3d 354, 363–65 (1st Cir. 2004).  It is a "drastic and unusual presumption" that is "limited to the violation of a statute intended to prevent the catastrophe which actually transpired."[13]  Id. at 364–65 (citations omitted). "[I]f it clearly appears the fault could have nothing to do with the disaster, [the rule] may be dismissed from consideration."  The Pennsylvania, 86 U.S. at 135.  Although Plaintiff argues that the Monhegan was in violation of several statutes at the time of the allision, Pl.'s Mem. at 11–12, she cannot establish the essential causal link between the alleged statutory violations and the allision.

Plaintiff first points to 46 C.F.R. §15.605(a), which provides in relevant part that "[e]ach uninspected passenger vessel (UPV) must be under the direction and control of an individual credentialed by the Coast Guard, as follows: (a) Every UPV of 100 [gross tons] or more . . . must be under the command of an individual holding a license or [merchant mariner credential] endorsed as master . . ."  Even assuming that the Monhegan violated

---

[13] Plaintiff does not attempt to explain how the purpose of the various regulations it cites is to prevent this type of incident.

this rule,[14] there is simply no connection between Maxcy's credentials and the Santandrea's allision with the Monhegan. Had Plaintiff presented some expert evidence establishing that Maxcy's handling of the Monhegan caused the Santandrea to break free and drift into the Monhegan, the analysis might go the other way, but that is not the case.

Next, Plaintiff points to 46 C.F.R. §§ 15.705 and 15.1111, and 46 U.S.C. § 8104, which set forth regulations for watch schedules, work schedules, and rest periods. Again, even assuming that the Monhegan violated these rules,[15] Plaintiff cannot establish the imperative connection between such a violation and the accident at issue. Plaintiff has not connected Maxcy's work schedule, watch schedule, or rest times with the Santandrea's allision. Thus, this is clearly not the type of case warranting the application of the Pennsylvania rule. Furthermore, given the strong and unrebutted presumption that the Santandrea was

---

[14] Defendant Priestly does not dispute that Maxcy did not have these credentials but argues that this rule is inapplicable to the Monhegan because it is not an uninspected passenger vessel. See Def.'s Reply to Pl.'s Opp. 5–6, ECF No. 48. Given the above analysis, the Court need not address the merits of this argument.

[15] These rules, however, are likely not applicable as they contain exceptions for "exceptional circumstances," 46 C.F.R. § 15.1111(j), and for when the vessel is "adequately moored, anchored, or otherwise secured in a harbor of safe refuge," as was the case here. 46 U.S.C. § 15.705 (f)(1); 46 C.F.R §15.705 (f)(1). Further, Defendant Priestly again argues that these rules are not applicable to the Monhegan because it is not an uninspected passenger vessel.

16

negligent, application of the Pennsylvania rule is inappropriate.
See Am. River Transp. Co. v. Kavo Kaliakra SS, 148 F.3d 446, 450–
51 (5th Cir. 1998) ("[T]he Pennsylvania rule cannot be pressed to
such an extreme as to justify a division of damages when the
accident was undoubtably due to the negligence of [the] offending
vessel.").[16]

IV.   CONCLUSION

For the reasons contained herein, Defendant Priestly's Motion
for Summary Judgment, ECF No. 45, is GRANTED.


IT IS SO ORDERED.


_WESmith_ (signature)
_____
William E. Smith
District Judge
Date: November 14, 2022

---

[16] Finally, Plaintiff also argues that summary judgment is
inappropriate because the facts indicate that the Monhegan was
comparatively negligent. Pl.'s Mem. at 14.  However, this is the
type of case where expert testimony is needed to evaluate
negligence.  See discussion supra.  On these facts and without
expert evidence, no reasonable fact finder could find that the
Monhegan bore any fault for the allision.  Further, the presumption
against Plaintiff is such that application of comparative fault
principles is not necessary.  See Combo Maritime, Inc. v. U.S.
United Bulk Terminal, LLC, 615 F.3d 599, 608–09 (5th Cir. 2010)
(where presumption of negligence applied to each vessel involved
in allision, comparative negligence principles applied).  Thus,
this argument is also unsuccessful.